# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2487

_____

Lackawanna Chapter of the Railway & &ast;
Locomotive Historical Society, Inc.; &ast;
Friends of the New Jersey Railroad and &ast;
Transportation Museum Commission, &ast;
Inc., &ast;  Appeal from the United States
&ast;  District Court for the Eastern
       Plaintiffs - Appellants, &ast;  District of Missouri.
&ast;
    v. &ast;  [PUBLISHED]
&ast;
St. Louis County, Missouri, doing &ast;
business as Museum of Transportation, &ast;
&ast;
       Defendant - Appellee. &ast;

_____

Submitted: April 14, 2010
Filed: June 2, 2010

_____

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

_____

PER CURIAM.

This case presents the question whether the statute of limitations bars an action for replevin. The subject of the replevin action is the historic locomotive "No. 952,"

currently on display at the Museum of Transportation (the Museum) in St. Louis, Missouri.[1]

In a previous opinion, this court determined that the 1953 transfer of No. 952 by the Railway & Locomotive Historical Society to the Museum established an express or implied bailment for an indefinite period. *Lackawanna Chapter of the Ry. & Locomotive Historical Soc'y, Inc. v. St. Louis County*, 497 F.3d 832, 836 (8th Cir. 2007) (*Lackawanna I*). We remanded for consideration of, among other things, operation of Missouri's statute of limitations[2] on the replevin action filed in 2002 by appellant Lackawanna Chapter of the Railway & Locomotive Historical Society (Lackawanna). *Id.* at 837. On remand, the district court[3] determined that the five-year statute of limitations barred Lackawanna's action for replevin. We affirm the judgment of the district court because undisputed evidence demonstrates that in 1995 and 1996 appellee St. Louis County took actions inconsistent with the bailment.

---

[1]No. 952 is a "camelback" locomotive, so named because the engineer's cabin controls are located in the middle of the boiler. Camelback locomotives were used in the anthracite coal region of Northeastern Pennsylvania, where No. 952 was in active service from 1905 to 1938. After retiring from service, No. 952 was on display at the World's Fair in New York from 1939 to 1940.

[2]"Because our jurisdiction in this case is premised on the diversity of the parties, we apply state substantive law." *Lackawanna I*, 497 F.3d at 835. A state's substantive law includes its statutes of limitation. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004) (citing *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 866 (8th Cir. 2000) (applying Minnesota statute of limitations in a diversity action)). In *Lackawanna I*, this court accepted the parties' determination that Missouri substantive law governs this case. 497 F.3d at 835. On remand, the district court applied Missouri's statute of limitations and in this appeal the parties do not contest application of Missouri law.

[3]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

# I.

Because our previous opinion thoroughly describes the circumstances underlying this dispute, *see Lackawanna I*, 497 F.3d at 833-35, this opinion refrains from a full recitation of the facts.

On remand, both sides of this dispute moved for summary judgment. Lackawanna contended that its action for replevin accrued in 2002, claiming that is when it first demanded the return of No. 952. St. Louis County contended that undisputed evidence demonstrates that a demand and refusal occurred in 1995 or 1996.

The district court applied a five-year statute of limitations and ruled in favor of St. Louis County. The court stated that a replevin action accrues when a bailor demands return of the property and a bailee refuses to return the property. However, relying on *Sanderson v. Nunn*, 259 S.W. 892 (Mo. Ct. App. 1924), the district court recognized that "[w]hat is important is that the possessor clearly conveys the intent to interfere with the possessory interests of the owner." The court examined the record and determined that in 1995 and 1996, the Historical Society demanded return of No. 952 and the Museum refused, "thus interfering with [the bailor's] rights of ownership." Accordingly, the court held that Lackawanna's suit was time barred and granted St. Louis County summary judgment. This appeal followed.

# II.

We review the grant of summary judgment de novo. *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1116 (8th Cir. 1997). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most

favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

In Missouri, an action for replevin must be brought within five years of its accrual. *Vahey v. Vahey*, 120 S.W.3d 288, 292 (Mo. Ct. App. 2003); *Hamdan v. Bd. of Police Com'rs*, 37 S.W.3d 397, 399 (Mo. Ct. App. 2001). "The statute of limitations is an affirmative defense, . . . [defendants] who move for summary judgment on that basis bear the burden of showing that it bars plaintiff's claims." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. 2006) (en banc). Thus, summary judgment against Lackawanna is appropriate if undisputed facts require the conclusion that an action for replevin accrued five years before Lackawanna filed its complaint in 2002. *See Washburn v. Soper*, 319 F.3d 338, 344 (8th Cir. 2003) (concluding as a matter of law that statute of limitations barred a malpractice claim).

Lackawanna submits three grounds for reversal.

A.    Replevin

Lackawanna argues that genuine issues of fact preclude determining whether a demand for return of No. 952 was made in 1995 or 1996, and therefore, summary judgment is inappropriate. *See Powel*, 197 S.W.3d at 580 (stating statute of limitations is a matter of law where the relevant facts are uncontested). The premise of Lackawanna's argument is that an action for replevin accrues only upon a bailor's demand for return of the property and a bailee's subsequent refusal.

But this premise does not accurately reflect Missouri law. To be sure, in *Empiregas, Inc. of Palmyra v. Zinn*, the Missouri Court of Appeals held that a replevin claim did not accrue until plaintiff demanded, and the defendant refused, return of a leased heating fuel tank. 833 S.W.2d 449, 451 (Mo. Ct. App. 1992). But that case

-4-

does not stand for the proposition that in every case there must be a demand and refusal before a bailor may bring an action for replevin. Recent Missouri replevin cases include no such requirement. *See Vahey*, 120 S.W.3d at 292 (stating removal of personal property gave rise to replevin action); *Hamdan*, 37 S.W.3d at 399 (stating statute of limitations for replevin begins to run when the damage is sustained and capable of ascertainment).

Further, longstanding Missouri precedent establishes that a replevin action may accrue absent a demand and refusal. In *Bollman Bros. Co. v. Peake*, which concerned replevy of a piano, the plaintiff argued that "before an action of replevin for personal property can be maintained . . . a demand for possession must be made." 69 S.W. 1058, 1059 (Mo. Ct. App. 1902). The Missouri Court of Appeals rejected this argument stating, "[i]t is not the law that the accrual of a cause of action dependant on a demand . . . can be postponed indefinitely by the failure of a claimant to make a demand." *Id.* And in *Sanderson*, the Missouri Court of Appeals held that "any act" by the bailee "inconsistent with the purpose of the bailment and in derogation and defiance" of the bailor's rights would constitute a conversion. 259 S.W. at 894. In other words, "the wrongful conduct of the bailee terminates the bailment, entitling the bailor to the possession of the property." *Id.* We read these cases as establishing that in some circumstances a bailor's cause of action for replevin may accrue absent a demand.[4]

---

[4]Our understanding accords with the American Law Reports Annotations, which state that bailment contracts "may be terminated otherwise than by a demand and refusal, as where the bailee takes action indicating that he has repudiated the agreement under which he obtained possession of the bailed property." H.B. Chermside, Jr., Annotation, *When statute of limitations starts to run against bailor's action for recovery, or for damages for conversion or detention, of property deposited for an indefinite time*, 57 A.L.R.2d 1047 (1958).

Thus, although Lackawanna vigorously argues the record contains an issue of fact regarding demand, we need not delve into the fine particulars of that argument because undisputed facts establish that in 1995 and 1996, the Museum took actions inconsistent with the bailment and in derogation and defiance of the bailor's rights. In 1995, Mr. Howes, the president of the Historical Society at that time, "attempted to persuade Mr. Schmidt [the director of the Museum] to release the 952, or agree to some kind of temporary loan under which the museum would allow the 952 to be sent to Pennsylvania for display." Mr. Schmidt responded that the Museum "is committed to retaining this engine in its collection and is not interested in any swap for other engines." In May 1996, Mr. Schmidt stated in a letter to Mr. Howe that the Museum held No. 952 under a permanent loan and that the Museum "did not intend to relinquish this important artifact."

Despite the belief of the Historical Society that it had an ownership interest in No. 952, it did not file suit against the Museum to recover No. 952. Nonetheless, these undisputed facts establish that in 1995 and 1996, the Museum took actions inconsistent with the bailment and in defiance of the bailor's rights. *See Sanderson*, 259 S.W. at 894. At this point, the damage was sustained and capable of ascertainment. *See Hamdan*, 37 S.W.3d at 399. Accordingly an action for replevin accrued and expired before Lackawanna filed suit in 2002. We therefore affirm the judgment of the district court.

B.    Specific Performance

Lackawanna argues that under Mo. Rev. Stat. § 516.110, a ten-year statute of limitations governs its contract claim for specific performance and that this claim was timely filed. But that statute "applies only in instances in which an express written obligation provides for the payment of money or the delivery of property and that the money or property sued for is that money or property promised by the language of the writing." *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593, 594 (Mo. Ct. App. 1983).

"The promise must be contained within the writing and may not be shown by extrinsic evidence or consist of an obligation imposed by law from the facts." *Silton v. Kansas City*, 446 S.W.2d 129, 132 (Mo. 1969) (citing *Sam Kraus Co. v. State Highway Comm'n*, 416 S.W.2d 639, 641 (Mo. 1967)). Lackawanna, in its filings to the district court, admitted there is no formal or written instrument concerning the transfer of No. 952 to the Museum. Without such an instrument, section 516.110 does not apply.

## C. Missouri's Museum Property Act

Lackawanna argues that a provision in Missouri's Museum Property Act (MPA), Mo. Rev. Stat. § 184.111, provides the exclusive remedy by which St. Louis County can deprive Lackawanna of its interest in No. 952. Lackawanna contends that St. Louis did not comply with the provisions of the MPA and therefore cannot divest Lackawanna of its interest in No. 952. But this court need not adjudicate Lackawanna's interest in No. 952. In the claims before us, Lackawanna seeks possession of No. 952. Our decision today simply holds that the relevant statute of limitations bars Lackawanna's replevin action and claim for specific performance.

## III.

We affirm the judgment of the district court.

_____